**FILED**

**MAR 29 2011**

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

RICKEY LEONARD BEARD,

     Debtor.

Case No. 6:08-bk-11343-ABB
Chapter 7

_____/

LARRY GREGORY and
RITA GREGORY,

     Plaintiffs,

Adv. Pro. No. 6:09-ap-00028-ABB

vs.

RICKEY LEONARD BEARD,

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Complaint (Doc. No. 1) filed by the Plaintiffs Larry Gregory and Rita Gregory against the Defendant/Debtor Rickey Leonard Beard ("Debtor") pursuant to 11 U.S.C. Sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(5) and 523(a)(2)(B). The final evidentiary hearing was held on January 20 and January 27, 2011 at which Plaintiffs, the Debtor, and their respective counsel appeared. The parties submitted post-hearing briefs pursuant to the Court's directive (Doc. Nos. 43, 44).

Judgment is due to be entered in favor of the Debtor and against Plaintiffs for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Sale of Lawn Care Business*

This adversary proceeding emanates from Plaintiffs' sale of their lawn care business to the Debtor and the subsequent deterioration of the parties' relationship. Plaintiffs and the Debtor have known each other for many years and were close friends. Larry and the Debtor first met when they worked together for a lawn chemical company in Kentucky. They each moved to Central Florida where Plaintiffs started and grew a successful lawn care company, Sunset Lawn Care ("Sunset"), in DeBary, Florida. Larry Gregory ("Larry") and the Debtor are avid golfers and frequently played golf and took golf vacations together. Their spouses socialized with each other.

Plaintiffs decided to retire from the lawn care business in 2004. The Debtor was employed as the Executive Vice President of Operations for Massey Services, Inc. ("Massey"), a pest control business. Plaintiffs were interested in selling their business to the Debtor and he was interested in purchasing it. Plaintiff sold the business to Sunbum5 Enterprises, LLC ("Sunbum"), a Florida limited liability company created by the Debtor for the purchase of the business and of which he is the sole member, pursuant to the Asset Purchase Agreement executed by the parties on December 1, 2004 ("APA").[1] The Debtor executed the APA as a member of Sunbum and did not execute it in his individual capacity. The Debtor resigned from Massey in December 2004 to devote his time to running the lawn care business.[2]

---

[1] Pls' Ex. 31.
[2] Pls' Ex. 30.

The purchase price was $800,000.00. Larry valued Sunset at $800,000.00 based upon his many years of experience in the lawn care and lawn chemical business. The purchase price included three main components: (i) $100,000.00 for Sunset's physical assets, contracts, commitments, proprietary rights, and good will; (ii) $600,000.00 for the customer list; and (iii) $100,000.00 for Plaintiffs' five-year non-compete agreement. The physical assets included vehicles, machinery, and landscaping equipment. The business was generating gross annual revenue in excess of $1,000,000.00 in 2003 and 2004.

The APA required $50,000.00 to be paid at closing and $50,000.00 to be paid within thirty days of closing. Two promissory notes were executed, one for $500,000.00 and a second for $200,000.00, for payment of the balance of the purchase price. Plaintiffs did not request and the Debtor did not present to Plaintiffs any financial statements in connection with the sale of the business.

The sale closed in December 2004 and the Debtor commenced operating the business as Sunbum5. The Debtor and his sons, Nicklaus and Bradley Beard, worked full time in the business. The Debtor's wife, Molly Beard ("Molly"), had little involvement in the business. Plaintiffs' home was adjacent to the business premises and the Debtor and Plaintiffs had regular contact.

The two $50,000.00 installment payments were made to Plaintiffs pursuant to the APA and monthly payments were made to Plaintiffs on the promissory notes. Plaintiffs assert the monthly note payments were often late and they assessed continuous late payment penalties totaling $8,000.00. The Debtor asserts the monthly note payments

3

were timely made, but Plaintiffs failed to timely retrieve the payments because they were frequently in Kentucky.

Sunbum's annual revenues began to decline. Plaintiffs assert the decline was the result of fiscal mismanagement by the Debtor. The Debtor asserts the decline was caused by a faltering economy and Plaintiffs' breach of the APA's non-compete agreement. The Debtor maintains Plaintiffs assisted their daughter in opening a lawn care business that directly competed with Sunbum's business in violation of the APA non-compete agreement.

Larry, in early 2007, requested the Debtor provide him with financial information including a personal financial statement, tax documents for 2005, and Sunbum's 2006 balance sheet and profit and loss statement. The Debtor, on February 5, 2007, filled out and individually signed a two-page form Credit Application and two-page form Personal Financial Statement.[3] The Personal Financial Statement is a bond request form issued by Surety Specialty Group, Inc. and authorizes Surety Specialty Group, Inc. "to gather personal and corporate credit information as deemed necessary for underwriting purposes." Plaintiffs did not explain how this form was obtained or why it was utilized by the Debtor.

The Credit Application sets forth: (i) the Debtor earned a gross monthly salary of $10,000.00 and net income of $8,000.00 from the business; and (ii) he had no other sources of income. The Personal Financial Statement contains two columns on page one titled "What do you own?" and "What do you owe?" followed by a series of asset and

---

[3] Pls' Ex. 32.

4

debt disclosure categories. Page two of the Personal Financial Statement consists of three schedules for the delineation and description of various asset categories: Schedule A for stocks and bonds, Schedule B for equipment and automobiles, and Schedule C for real estate. The form does not provide for the disclosure of whether an asset is individually or jointly owned or whether any co-debtors are liable on a debt, except in Schedule C which asks "In Whose Name is Title?"

The Debtor disclosed assets totaling $2,208,227.00 in the Personal Financial Statement consisting of:

(i)     Cash on hand of $3,500.00;

(ii)    Cash of $1,000.00 in a Wachovia Bank account;

(iii)   Cash of $1,200.00 in a Riverside Savings account;

(iv)    EE savings bonds totaling $3,500.00;

(v)     Notes receivable of $2,500.00;

(vi)    A Honda automobile valued at $14,000.00;

(vii)   Furniture and fixtures of $35,000.00;

(viii)  Homestead property located at 1861 North Prairie Dunes Court, Oviedo, Florida 32765 ("Prairie Dunes Court") owned jointly with Molly valued at $420,000.00 and encumbered by a mortgage of $360,000.00;

(ix)    The business premises located at 780 Fort Florida Road, DeBary, Florida 32713 ("Fort Florida Road") owned jointly with Molly valued at $545,000.00 and encumbered by a mortgage of $545,000.00 held by Plaintiffs;

(x)     Business fixed assets of $1,064,327.00; and

(xi)    Jewelry valued at $25,000.00.

The Debtor provided the Credit Application and Personal Financial Statement to Larry at Sunbum's offices together with Sunbum's balance sheet as of December 31, 2006.[4] The information contained in the Credit Application and Personal Financial Statement regarding the Debtor's income and Sunbum's operations is consistent with the information contained in Sunbum's 2006 balance sheet. Plaintiffs did not request any additional information and conducted no due diligence as to the contents of these financial documents.

The parties' relationship deteriorated and Sunbum instituted civil litigation in the Florida State Courts in 2007 against Plaintiffs and others asserting breaches of the APA's non-compete agreement. Sunbum made payments to Plaintiffs on the promissory notes from 2005 through July 2008. Sunbum ceased making payments on the notes in July 2008 after the Debtor and Larry were unable to resolve their various issues. Plaintiffs filed a lawsuit in the Florida State Courts in 2008 against Sunbum and the Debtor for defaults of the APA and promissory notes.

Sunbum, on October 31, 2008 while the State Court litigation was pending, transferred its assets to MBN Services, LLC ("MBN") in exchange for MBN's assumption of Sunbum's liabilities pursuant to an Asset Purchase Agreement executed by the Debtor on behalf of Sunbum and by Molly on behalf of MBN.[5] MBN is a Florida limited liability company formed on October 31, 2008; Molly, Nicklaus, and Bradley are its managers.[6] The Debtor does not have an ownership interest in MBN. The Debtor

---

[4] Pls' Ex. 36.
[5] Pls' Ex. 34.
[6] Pls' Ex. 3.

6

filed a voluntary dissolution for Sunbum with the Florida Department of State, Division of Corporations on December 1, 2008.[7]

MBN, through Nicklaus and Bradley, operated the lawn care business for a period of time. The Debtor was involved in MBN's operations, but became reemployed with Massey where he continues to be employed. Molly had minimal involvement in the creation and operation of MBN. MBN, sometime in 2008, disposed of most or all of its assets. Some of the lawn care equipment was sold on Craig's List, some vehicles were repossessed, and some vehicles were returned to secured creditors.

### *Bankruptcy Filings*

The Debtor, his sons, and Sunbum filed for Chapter 7 bankruptcy protection. The Debtor filed an individual Chapter 7 bankruptcy case on November 26, 2008 ("Petition Date"), which stayed the Plaintiffs' State Court litigation as to the Debtor pursuant to 11 U.S.C. Section 362(a). Scott Fransen was appointed the Chapter 7 Trustee of the Debtor's bankruptcy case.

Plaintiffs proceeded with a summary judgment proceeding post-petition against Sunbum and a Summary Judgment was entered by the State Court on December 17, 2008 in favor of Plaintiffs and against Sunbum: (i) finding Sunbum is in default of the APA and promissory notes; and (ii) Sunbum is indebted to Plaintiffs in the amounts of $423,322.50 and $253,000.00 pursuant to the promissory notes.[8] No judgment was entered by the State Court against the Debtor due to the automatic stay of 11 U.S.C. Section 362(a).

---

[7] Pls' Ex. 1.
[8] Pls' Ex. 35.

7

Bradley and Nicklaus filed individual Chapter 7 bankruptcy cases on December 26, 2008 and November 5, 2009, respectively. Sunbum filed a Chapter 7 bankruptcy case on October 1, 2009 captioned *In re Sunbum5 Enterprises, LLC*, Case No. 6:09-bk-14839 and Carla P. Musselman has been appointed the Chapter 7 Trustee. Trustee Musselman instituted an adversary proceeding against Molly, Bradley, Nicklaus, and MBN seeking, in part, recovery of the assets transferred by Sunbum to MBN. The trial of Trustee Musselman's adversary proceeding was held on January 20 and January 27, 2011 and the matter is pending.

### *Plaintiffs' Adversary Proceeding*

Plaintiffs filed a five-count Complaint against the Debtor alleging: (i) the indebtedness owed to Plaintiffs for defaults of the APA and promissory notes is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B); and (ii) the Debtor's discharge should be denied pursuant to 11 U.S.C. Section 727(a) for fraudulent disclosure omissions in his bankruptcy papers, failures to keep or preserve recorded information, and failures to explain the loss of assets and income. Plaintiffs have the burden of proof burden on each cause of action in their Complaint and their burden is substantial. They are required to establish each element of each cause of action by a preponderance of the evidence.

### *Count V*

Count V of Plaintiffs' Complaint is based upon the Personal Financial Statement presented by the Debtor to Larry. Plaintiffs assert the Personal Financial Statement "was materially false in that it listed assets the Debtor now claims he never owned" and they

8

reasonably relied upon the statement as accurate "and took no action to declare defaults or pursue the debt due Plaintiffs."[9] They contend the promissory note indebtedness is nondischargeable pursuant to Section 523(a)(2)(B) of the Bankruptcy Code.

Plaintiffs have failed to establish the foundational element of a Section 523(a) cause of action—that the Debtor, individually, is indebted to Plaintiffs. To the extent Plaintiffs assert a debt is owed to them by the Debtor pursuant to the APA, such assertion is without merit because the APA does not impose any obligations upon the Debtor individually. The Debtor executed the APA on behalf of Sunbum as its member. He is not a party to the APA and has no obligations to Plaintiffs pursuant to the APA. Sunbum is a party to the APA and has certain obligations pursuant to the APA.

To the extent Plaintiffs assert a debt is owed to them by the Debtor pursuant to the promissory notes, they have not established the Debtor is personally liable for the note obligations. The APA and the December 17, 2008 Summary Judgment reference two promissory notes as Exhibits C and D, but Plaintiffs did not include copies of the promissory notes or any personal guarantees in their exhibits. Plaintiffs have presented no evidence establishing the Debtor is personally liable to Plaintiffs for the promissory note obligations.

Should documentary evidence exist establishing the Debtor executed the notes individually or personally guaranteed them, the indebtedness is dischargeable because Plaintiffs have not established the elements of Section 523(a)(2)(B). Plaintiffs did not request or obtain a written financial statement from the Debtor when they sold their

---

[9] Doc. No. 1 at p. 4.

business to Sunbum in December 2004.  Plaintiffs requested and obtained the Credit Application and Personal Financial Statement from the Debtor in February 2007—more than two years after the sale had been consummated.  Plaintiffs did not rely on the Credit Application or the Personal Financial Statement in connection with the sale of the business because these documents did not exist in 2004.

The promissory note debt was created in 2004 pursuant to the sale of Plaintiffs' business to Sunbum.  The promissory note indebtedness preexisted the issuance of the Credit Application and Personal Financial Statement and Plaintiffs did not rely upon these documents for the creation of any indebtedness.  Plaintiffs did not make any further loans to the Debtor or Sunbum and they did not renew, extend or modify the loan terms. Plaintiffs' decision to not declare defaults on the notes did not create a new debt; it was simply a business decision *to not pursue their collection rights as creditors at that time.* Plaintiffs, in fact, benefitted from not declaring the notes in default in 2007.  Monthly payments continued to be made on the notes until July 2008.

Plaintiffs have failed to establish the elements of Section 523(a)(2)(B) by a preponderance of the evidence.  Any indebtedness owed by the Debtor to Plaintiffs is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B).  Judgment is due to be entered in favor of the Debtor and against Plaintiffs on Count V of Plaintiffs' Complaint.

### *Counts I and III*

Plaintiffs assert in Count I the Debtor's discharge should be denied pursuant to Section 727(a)(2)(A) of the Bankruptcy Code because the Debtor, within one year of the Petition Date, and with the intent to hinder, delay or defraud his creditors, transferred,

removed, destroyed or concealed property consisting of jewelry, golf clubs, household goods, and real estate. They assert in Count III the Debtor's discharge should be denied pursuant to Section 727(a)(4)(A) of the Bankruptcy Code because he made false oaths and accounts in his bankruptcy papers regarding those items.

*Jewelry:* The Debtor listed a "bracelet" valued at $5.00 in Schedule B for the category "Furs and jewelry" (Main Case Doc. No. 14). Plaintiffs' primary evidence regarding the Debtor's alleged jewelry disclosure omissions consists of: (i) Larry's testimony the Debtor "is a jewelry guy" and he has seen the Debtor wear jewelry over the years; and (ii) the Debtor's listing of jewelry valued at $25,000.00 in the 2007 Personal Financial Statement. Plaintiffs did not delineate any specific jewelry they saw the Debtor wearing over the years other than a certain items that appear in various photographs of the Debtor at work functions in 2000 to 2004.[10]

The Debtor testified he "is not a jewelry guy" and explained: (i) he stopped wearing his wedding ring several years ago due to a surgery; (ii) the bracelet appearing in the 2004 photograph is a copper bracelet he wore while he was actively golfing, but no longer has the bracelet; (iii) he has not owned a Rolex watch and he no longer has the watch in 2000 photograph; and (iv) the only item of jewelry he owns is a plastic bracelet, which he was wearing on the witness stand. His testimony was credible.

The photographs do not establish the Debtor wore much jewelry or had any jewelry having more than de minimis value. The watch, wedding band, and bracelet in the photographs appear to be inexpensive ordinary menswear items. Given the

---

[10] Pls' Ex. 41.

remoteness of time between the photographs and Plaintiffs' allegations made in their Complaint—more than nine years—it is believable, and likely, the Debtor no longer has the items contained in the photographs.

The Debtor explained the jewelry valued at $25,000.00 listed in the Personal Financial Statement was Molly's jewelry and owned by her individually. His testimony was credible. The Personal Financial Statement form is rudimentary and does not delineate whether the asset disclosures were to include individual, jointly owned, or spousal assets. Based on the format of the form it is reasonable the Debtor understood he was required to list individually owned and household assets. The Debtor's testimony is consistent with the jewelry scheduled in the Beard's Cotton States Homeowners Policy[11] and with his testimony at his Section 341 meeting of creditors conducted by Trustee Fransen.[12]

Plaintiffs presented no evidence the Debtor had any ownership interest in jewelry on the Petition Date, with the exception of a $5.00 bracelet. Plaintiffs did not establish the Debtor transferred, removed, destroyed, mutilated, or concealed any jewelry within one year of the Petition Date with the intent to hinder, delay, or defraud his creditors. Plaintiffs did not establish the Debtor knowingly and fraudulently made a false oath or account with respect to any jewelry.

*Household Goods:* The Debtor listed "None" in his Schedule B for household goods and furnishings (Main Case Doc. No. 14). Plaintiffs, based upon the Debtor's listing of furniture and fixtures valued at $35,000.00 in the Personal Financial Statement,

---

[11] Debtor's Ex. C.
[12] Pls' Ex. 37, pp. 27-28.

assert the Debtor's listing of no household goods constitutes a fraudulent omission and that the Debtor transferred, removed, destroyed, mutilated, or concealed household goods within one year of the Petition Date with the intent to hinder, delay, or defraud his creditors.

The Debtor testified the furniture and fixtures referenced in the Personal Financial Statement are solely owned by Molly and that they, throughout their thirty-six years of marriage, have agreed Molly owns the contents of their home, except for the Debtor's personal effects. The Debtor's testimony was credible and unrebutted and is consistent with his testimony at his Section 341 meeting of creditors.[13]

Plaintiffs presented no evidence the Debtor had any ownership interest in household goods or furnishings on the Petition Date. Plaintiffs did not establish the Debtor transferred, removed, destroyed, mutilated, or concealed any household goods or furnishings within one year of the Petition Date with the intent to hinder, delay, or defraud his creditors. Plaintiffs did not establish the Debtor knowingly and fraudulently made a false oath or account with respect to any household goods or furnishings.

*Golf Clubs:* The Debtor did not list an interest in any golf clubs in his original Schedule B. Plaintiffs assert, based upon the Debtor's long history of golfing, he owns multiple sets of valuable golf clubs and his failure to list such clubs in Schedule B constitutes a fraudulent omission and the Debtor, with the intent to hinder, delay or defraud his creditors, transferred, removed, destroyed or concealed the golf clubs.

---

[13] Pls' Ex. 37, p.32.

The Debtor filed an Amended Schedule B on May 8, 2009 (Doc. No. 43) setting forth on the Petition Date he owned "miscellaneous golf clubs, several of which are broken" and stating they have no value. The Debtor testified at the trial: (i) he quit playing golf in 2006; (ii) has not ever owned multiple sets of golf clubs; and (iii) on the Petition Date he owned a mismatched set of clubs with nominal value, which he did not list in Schedule B because he believed, based upon misinformation he received from a paralegal, he was not required to list them. His testimony was credible and unrebutted and is consistent with his testimony at his Section 341 meeting of creditors.[14]

Plaintiffs did not establish the Debtor transferred, removed, destroyed, mutilated, or concealed any golf clubs within one year of the Petition Date with the intent to hinder, delay, or defraud his creditors. Plaintiffs did not establish the Debtor knowingly and fraudulently made a false oath or account with respect to any golf clubs.

*Real Estate:* The Debtor listed "None" in his original Schedule A for interests in real property. He filed amended schedules on May 8, 2009 (Main Case Doc. Nos. 42, 44): (i) Amended Schedule A listing he jointly owns Prairie Dunes Court with Molly and values the property at $280,000.00; and (ii) Amended Schedule C claiming Prairie Dunes Court as exempt homestead property.

The Debtor explained his failure to list his ownership interest in Prairie Dunes Court was an unintentional oversight. He and his wife refinanced the property prepetition and he mistakenly believed the property had been re-titled in Molly's name individually.

---

[14] Pls' Ex. 37, pp. 25-27.

14

The Debtor learned post-petition he has an ownership interest in Prairie Dunes Court and filed amended schedules disclosing his joint ownership interest that property.

The Debtor's testimony was credible and unrebutted. Plaintiffs did not establish the Debtor transferred, removed, destroyed, mutilated, or concealed his interest in any real estate within one year of the Petition Date with the intent to hinder, delay, or defraud his creditors. Plaintiffs did not establish the Debtor knowingly and fraudulently made a false oath or account with respect to any real estate.

***Trial Presentation:*** Plaintiffs' Complaint contains allegations relating only to jewelry, golf clubs, household goods, and real estate. Plaintiffs did not allege any other disclosure omission or fraudulent transfer relating to any other items. Plaintiffs, at trial, asserted three additional disclosure omissions: (i) the Debtor failed to disclose in his Statement of Financial Affairs the sale of the Fort Florida Road property; (ii) he failed to list in Schedule B an account receivable owed to him by Sunbum; and (iii) he failed to list series EE savings bonds in Schedule B.

***A.*** ***Fort Florida Road:*** The Debtor listed "None" in Question 10 of his Statement of Financial Affairs for property transferred outside of the ordinary course of the Debtor's business within two years of the Petition Date. The Debtor and Molly jointly owned the Fort Florida Road property and sold the property on August 21, 2007 to a third party for $519,000.00.[15] The Debtor was required to disclose the sale in Question 10 of his Statement of Financial Affairs since it occurred within two years of the Petition Date and was outside the Debtor's ordinary course of business.

---

[15] Pls' Ex. 33.

15

The Debtor filed an Amendment to his Statement of Financial Affairs on May 8, 2009 setting forth he and Molly sold the Fort Florida Road property on August 21, 2007 to a third party and received net sale proceeds of $62,976.77. The Debtor testified his failure to disclose the property sale in his original Statement of Financial Affairs was an unintentional oversight. The sale had occurred one and a half years prior to the Petition Date and he forgot to list it. The Debtor and Molly spent the sales proceeds on business and living expenses. His testimony was credible and unrebutted.

**B.** *Sunbum Receivable:* The Debtor filed Amended Schedule B on May 8, 2009 listing a receivable of $98,626.00 owed to him by Sunbum. The Debtor testified he failed to list the receivable because Sunbum is a Chapter 7 debtor and the sum is uncollectible. He mistakenly believed he was not required to list the receivable because it had no value. His testimony was credible and unrebutted.

**C.** *Savings Bonds:* The Debtor listed five series EE savings bonds in the Personal Financial Statement with a total par value of $3,500.00.[16] He listed no savings bonds in his Schedule B. The Debtor testified the savings bonds were the sole property of Molly, they were sold prepetition, and he had no ownership interest in any savings bonds on the Petition Date. His testimony was credible and unrebutted and is consistent with his testimony at his Section 341 meeting of creditors.[17] The documentary evidence reflects the savings bonds were issued in Molly's name individually and were cashed in in March and April 2008.[18]

---

[16] Pls' Ex. 32.
[17] Pls' Ex. 37, p. 31.
[18] Pls' Ex. 46.

### Conclusion: Counts I and III

The Debtor made a number of disclosure omissions in his Schedules and Statement of Financial Affairs. No single disclosure omission, or the omissions taken together collectively, establish a basis for the denial of the Debtor's discharge. The Debtor credibly explained each disclosure omission and his testimony was unrebutted by Plaintiffs. He made no false oaths or accounts knowingly and fraudulently. He, upon learning of his disclosure omissions, promptly filed detailed amendments to his Schedules and Statement of Financial Affairs on May 8, 2009.

The Debtor had nothing to gain by omitting the various assets and the Fort Florida Road property transfer from his Schedules and Statement of Financial Affairs. Plaintiffs, given their history with the Debtor, are intimately familiar with the Debtor's and his family's financial standing. Plaintiffs were fully aware of the sale of the Fort Florida Road property given they had held the second-priority mortgage on the property, which was satisfied at the sale closing by the payment of $106,987.83 to them.[19] Trustee Fransen was satisfied with the Debtor's disclosures and level of cooperation in the Debtor's case: (i) he filed no objections to exemptions and no complaints against the Debtor; (ii) he filed no motions to compel the turnover of assets or for documentation; and (iii) he declared the Debtor's case a no asset case.

The Debtor listed his ownership interest in Sunbum in Schedule B and valued that interest at $0.00. Sunbum is a separate and distinct entity from the Debtor. The Debtor was not required to disclose Sunbum's assets in his bankruptcy papers, but only his

---

[19] Pls' Ex. 33.

interest in Sunbum, namely his membership interest and its value. Sunbum's assets are not property of the Debtor's bankruptcy estate.

Plaintiffs did not establish the Debtor transferred, removed, destroyed, mutilated, or concealed any assets within one year of the Petition Date with the intent to hinder, delay, or defraud his creditors. Plaintiffs did not establish the Debtor knowingly and fraudulently made a false oath or account with respect to any assets or financial matters. Judgment is due to be entered in favor of the Debtor and against Plaintiffs on Counts I and III of Plaintiffs' Complaint.

### *Count II*

Plaintiffs assert in Count II the Debtor's discharge should be denied pursuant to Section 727(a)(3) of the Bankruptcy Code because the Debtor, without justification, has concealed, destroyed, falsified or failed to keep or preserve any recorded information from which the Debtor's financial condition could be ascertained.

The Debtor hand-delivered to Larry the financial documentation Larry requested in February 2007 and fully complied Larry's document request. Plaintiffs did not request any additional information from the Debtor or Sunbum at that time.

Plaintiffs propounded various document requests upon the Debtor and Sunbum in the State Court litigation and in the adversary proceedings. The Debtor produced the financial documentation that was available, including bank statements, but much of his and Sunbum's financial documentation was destroyed when Sunbum's office was flooded due to Tropical Storm Fay in 2008.

18

Plaintiffs did not establish the Debtor, without justification, concealed, destroyed, falsified or failed to keep or preserve any recorded information from which the Debtor's financial condition could be ascertained. Judgment is due to be entered in favor of the Debtor and against Plaintiffs on Count II of Plaintiffs' Complaint.

### Count IV

Plaintiffs assert in Count IV the Debtor's discharge should be denied pursuant to Section 727(a)(5) of the Bankruptcy Code because "the Debtor failed to explain satisfactorily the loss of assets or deficiencies of assets to meet the Debtor's liabilities." Plaintiffs failed to delineate in their Complaint what assets were lost or what asset deficiencies exist. Plaintiffs contended at the trial the Debtor failed to explain Sunbum's disintegration from generating annual revenues of more than $1,000,000.00 in 2004 to filing a Chapter 7 liquidation in 2008.

The value of Plaintiffs' Sunset lawn care business in December 2004 was not the amount of its gross annual revenue, but was $800,000.00, as valued by Larry in the APA. The business' value deteriorated from 2004 to the Petition Date due to two main factors: the Debtor's inexperience and the nationwide economic downturn.

The Debtor had no previous experience in owning and running a business when Plaintiffs sold Sunset to Sunbum. His sons had no experience in operating a lawn care business. The Debtor has had much success as an operational manager with various chemical companies, but he readily admits he failed as a business owner. Larry admitted he observed the Debtor was struggling in operating the business. The economic downturn also played a key role in Sunbum's deterioration. Lawn care is a non-essential

19

service and many homeowners are spending less on such services, or cutting such cost from their budgets entirely. As customers discontinued or reduced services, Sunbum's revenues declined.

To the extent Plaintiffs contend the Debtor failed to explain the loss of household goods, jewelry, golf clubs, bonds, the Fort Florida Road property, the Debtor fully and credibly addressed each of these items, as set forth *supra*.

Plaintiffs did not establish the Debtor failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. Judgment is due to be entered in favor of the Debtor and against Plaintiffs on Count IV of Plaintiffs' Complaint.

### Conclusion

The Debtor had an obligation to fully and accurately disclose all of his assets and debts in his original Schedules and to fully and accurately make the disclosures required by the Statement of Financial Affairs. It was not for the Debtor to decide which assets are worthy of disclosure and which are not. He was required to disclose *all* of his assets regardless of their value. The Debtor was dilatory in fulfilling his disclosure duties.

The Debtor's omissions were not motivated by fraudulent or bad intent. This case does not present the situation where the Debtor crossed the line between being dilatory, but deserving of a discharge, and committing acts and omissions that call for the denial of his discharge. He is entitled to a discharge.

20

## CONCLUSIONS OF LAW

### *Count V:  11 U.S.C. Section 523(a)(2)(B)*

Plaintiffs pled and presented a Section 523(a)(2)(B) cause of action.  The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991).  Section 523(a)(2)(B) excepts a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by:

> (B) use of a statement in writing—
>
> > (i)     that is materially false;
> >
> > (ii)    respecting the debtor's or an insider's financial condition;
> >
> > (iii)   on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> >
> > (iv)    that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

The "intent to deceive" analysis employs the same intent analysis employed in a Section 523(a)(2)(A) determination and may be established by the totality of the circumstances.  In re DeJulio, 322 B.R. 456, 461 (Bankr. M.D. Fla. 2005).  A plaintiff must also establish causation—that it sustained a loss as a result of the representation, which is an implied element of Section 523(a)(2)(B).  Collins v. Palm Beach Sav. & Loan (In re Collins), 946 F.2d 815, 816 (11th Cir. 1991).

A Section 523 cause of action requires the existence of a debt owed by the defendant to the plaintiff. 11 U.S.C. § 523(a). Plaintiffs failed to establish the Debtor is individually indebted to Plaintiffs. Sunbum, not the Debtor, is a party to the APA. Plaintiffs presented no promissory notes or guarantees establishing any individual liability of the Debtor for the APA or note obligations.

Plaintiffs failed to establish the threshold element of a Section 523(a)(2)(B) cause of action—the use of a written financial statement contemporaneous with the creation of a debt. Plaintiffs did not request, and the Debtor did not produce to Plaintiffs, any financial documentation during Sunbum's purchase of Plaintiffs' lawn care business. The Credit Application and Personal Financial Statement were presented to Plaintiffs more than two years after the creation of the APA and promissory note obligations.

Plaintiffs assert they reasonably relied upon the Credit Application and Personal Financial Statement and, as a result of such reliance, abstained from declaring the notes in default or pursuing collection action. It appears Plaintiffs believe their forbearance of a default declaration or collection action constitutes new or additional consideration. The notes had not matured in February 2007. Plaintiffs' forbearance did not create a new indebtedness owed by the Debtor to Plaintiffs nor did it constitute a modification, renewal, or extension of the existing note indebtedness. Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 131-132 (4th Cir. 1999). No new debt or any modification, renewal, or extension of a debt was created when the Debtor issued the financial statements to Plaintiffs in February 2007 or as the result of Plaintiffs' forbearance.

Any indebtedness owed by the Debtor to Plaintiffs is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B). Judgment is due to be entered in favor of the Debtor and against Plaintiffs on Count V of the Complaint.

### Counts I and III: Sections 727(a)(2)(A) and 727(a)(4)

Objections to discharge pursuant to Section 727(a) are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). "[T]he reasons for denying a discharge must be real and substantial, not merely technical and conjectural." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994). Plaintiffs bear the significant burden of establishing actual fraudulent intent with respect to their Section 727(a) causes of action. Id. at 306.

**Section 727(a)(2)(A):** A discharge shall be denied pursuant to Section 727(a)(2)(A) where a debtor, with intent to hinder, delay, or defraud a creditor has, within one year of the petition date, transferred, removed, destroyed, mutilated, or concealed property of the debtor. 11 U.S.C. § 727(a)(2)(A). "Concealment" in relation to Section 727(a)(2)(A) "occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer." In re Greene, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (citation omitted).

**Section 727(a)(4)(A):** A discharge shall be denied pursuant to Section 727(a)(4)(A) where "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A). "A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and

23

see that the questions are answered completely in all respects." In re Sofro, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990).

A disclosure omission may constitute a false oath or account pursuant to Section 727(a)(4)(A). A discharge should be denied where the omission is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991). The subject matter of a false oath is considered "material" and thus sufficient to bar discharge if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984). "Discharge may not be denied where the untruth was the result of mistake or inadvertence." Keefe v. Rudolph (In re Rudolph), 233 Fed. App'x 885, 889 (11th Cir. 2007) (*citation omitted*).

The Debtor failed to disclose the Fort Florida Road sale in his original Statement of Financial Affairs and all of his assets in his original Schedules. His golf clubs, the Sunbum receivable, and interest in Prairie Dunes Court were not initially disclosed. His disclosure deficiencies were not fraudulent. He was not attempting to conceal any assets and he reaped no benefits from his disclosure omissions. He voluntarily amended his Schedules and Statement of Financial Affairs to remedy the disclosure deficiencies. Trustee Fransen raised no issues regarding the Debtor's disclosures and assets. This case has been declared a no asset case and no adversary proceedings other than Plaintiffs' were instituted against the Debtor.

The Debtor did not transfer or conceal any property with the intent to hinder, delay, or defraud his creditors. The Debtor did not knowingly or fraudulently make a

24

false oath or account in connection with his bankruptcy case. Plaintiffs have not established a basis for denial of a discharge pursuant to either 11 U.S.C. Section 727(a)(2)(A) or Section 727(a)(4)(A).

### Count II: Section 727(a)(3)

Section 727(a)(3) of the Bankruptcy Code provides the Court shall grant the Debtor a discharge unless:

> the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case. . . .

11 U.S.C. §727(a)(3). The purpose of Section 727(a)(3) is to make certain the creditors and Trustee are given sufficient information to understand the debtor's financial condition. In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996). The Debtor must justify a lack of adequate record keeping. 11 U.S.C. § 727(a)(3); Meridian Bank v. Alten, 958 F.2d 1226, 1234 (3d Cir. 1992). Each case must be determined on its own facts and the level of a debtor's business acumen and sophistication are relevant. In re Milam, 172 B.R. 371, 375 (Bankr. M.D. Fla. 1994); Meridian Bank, 958 F.2d at 1231.

The evidence reflects the Debtor maintained adequate records personally and for Sunbum. The Debtor produced to Plaintiffs: personal and business tax returns; various financial statements for Sunbum prepared in QuickBooks; bank statements; his homeowner's insurance policy; the Fort Florida Road sale closing documents; and the savings bond documentation. The Debtor was unable to produce various records relating to Sunbum because those records were destroyed in a flood.

The Debtor satisfactorily explained and justified his inability to provide those records to Plaintiffs. Plaintiffs failed to establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(3).

### 11 U.S.C. Section 727(a)(5)

Section 727(a) of the Bankruptcy Code sets forth a debtor shall be granted a discharge unless certain abuses have been committed by the debtor. A discharge will be denied where:

> the debtor has failed to explain satisfactorily, before determination of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5) (2007). Plaintiffs have the initial burden of establishing their Section 727(a)(5) objection to discharge. Hawley v. Cement Indus., Inc. (In re Hawley), 51 F.3d 246, 249 (11th Cir. 1995). They must establish "the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors." Murphy v. Rivertree Landing, LLC (In re Murphy), Case No. 6:08-cv-198-Orl-31, 2008 WL 2224835 *5 (M.D. Fla. May 27, 2008). The time of the formerly owned substantial, identifiable asset cannot be "too remote in time to the date of the commencement of the case." In re Walden, 380 B.R. 883, 894 (Bankr. M.D. Fla. 2008).

The burden then shifts to the debtor to satisfactorily explain the loss. In re Hawley, 51 F.3d at 249. Whether a debtor has satisfactorily explained a loss of assets is a finding of fact. Id. at 248. "To be satisfactory, an explanation must convince the judge[.]" In re Chalik, 748 F.2d at 619.

The Plaintiff did not establish its initial burden as to any of its alleged "asset losses." The Debtor did not ever have an ownership interest in the savings bonds, jewelry, or household goods references in the Personal Financial Statement, so there could be no asset loss regarding these items. The Debtor and Molly sold the Fort Florida Road property; there was no loss of this asset and they fully expended the net sale funds prior to the Petition Date. The Debtor's income does not constitute property of the estate pursuant to 11 U.S.C. Section 541(a)(6). The difference between his monthly income and expenses cannot form a basis for a Section 727(a)(5) action because no asset loss is involved.

The assets of Sunbum are not assets of the Debtor's bankruptcy estate. Only his ownership interest in Sunbum constitutes property of his estate. To the extent Sunbum's demise constitutes a "loss," the Debtor satisfactorily explained why the business failed.

Plaintiffs have not established a basis for denial of a discharge pursuant to Section 727(a)(5). Judgment is due to be entered in favor of the Debtor and against Plaintiffs on Counts I, II, III, IV, and V of their Complaint.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the relief sought in Plaintiffs' Complaint (Doc. No. 1) is hereby **DENIED** pursuant to 11 U.S.C. Sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(5), and 523(a)(2)(B); and it is further

**ORDERED, ADJUDGED and DECREED** that any indebtedness owed by the Debtor to Plaintiffs is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(B) and is due to be discharged; and it is

**ORDERED, ADJUDGED and DECREED** that the Clerk of Court is hereby directed to enter the general discharge of the Debtor pursuant to 11 U.S.C. Section 727.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 29th day of March, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Court

28